Colonel John R. Bailey, Director Arkansas State Police P.O. Box 5901 Little Rock, Arkansas 72215
Dear Colonel Bailey:
This is in response to your request for an opinion on the eligibility of certain persons with expunged felony convictions to obtain a concealed handgun permit under Act 419 of 1995. That act, which provides for the issuance of such permits, provides (at A.C.A. § 5-73-309(4) (Supp. 1995)) that: "[t]he director shall issue a license if the applicant: . . . Is not ineligible to possess a firearm by virtue of having been convicted of a felony in a court of this state, of any other state, or of the United States without having been pardoned for same and had firearms possession rights restored." The relevant language above disqualifies persons who have been "convicted" of felonies without having been pardoned and having had their firearms rights restored.[1] This language does not address whether an expunged conviction constitutes a "conviction" for purposes of Act 419 ineligibility, although it does refer only to a pardon and a restoration or rights as the method to regain eligibility after a "conviction." Act 419 also provides for the revocation of a concealed handgun permit immediately upon notification that the licensee "has been found guilty, or has pled guilty or nolo contendere to any crime involving the use of a weapon." See A.C.A. § 5-73-312(b) (Supp. 1995). This provision, at least (where a new crime involves a weapon) would thus appear to apply anytime there is an adjudication of guilt, regardless of whether the conviction was later "expunged."
Because, however, the general language of the concealed handgun carry law does not itself specify who is "ineligible" to be granted a concealed carry permit because of a former crime, and does not define the word "convicted" for that purpose, it is necessary to look to the Arkansas "felon in possession" statute (A.C.A. § 5-73-103) to determine whether a person with an expunged felony conviction is ineligible to carry a firearm in Arkansas. That statute punishes the carrying of firearms by certain persons and outlines the instances in which the right to carry a firearm may be restored. Certainly if a person is subject to a criminal penalty for carrying a firearm under the "felon in possession" statute, he is likewise "ineligible" to carry a firearm for purposes of the concealed carry law. In my opinion a court would look to the "felon in possession statute" in order to determine the intent of Act 419 (the concealed carry law) on this point. In construing any statute, a court will place it beside other statutes relevant to the subject, and give it the meaning and effect derived from the combined whole. Hercules Inc. v. Pledger,319 Ark. 702, 894 S.W.2d 576 (1995). The "felon in possession" statute, however, was amended by two separate, arguably conflicting acts of the 1995 General Assembly, Act 595 of 1995 and Act 1325 of 1995. It is this fact which gives rise to your questions.
It is necessary to set out some background information prior to restating and answering your questions. You note that you have reviewed Att'y. Gen. Op. 95-260, in which I concluded, based upon Act 595 of 1995, that an expunged felony conviction may be used as an underlying felony charge to support a prosecution under the "felon in possession" statute (A.C.A. § 5-73-103 (Supp. 1995)), where the possession of the firearm occurred after the effective date of Act 595. It was concluded that the expunged felony could be used as an underlying felony to support a felon in possession charge anytime there was an adjudication of guilt on the underlying felony, and as long as the defendant had not been pardoned or had his firearms rights specifically restored under A.C.A. § 5-73-103. This was the clear intention of Act 595, which was adopted to "legislatively overrule" the holding in Irvin v. State, 301 Ark. 416,784 S.W.2d 763 (1990), that an expunged felony conviction could not be used to support a felon in possession charge. See Op. Att'y Gen. 95-260.
Your questions are prompted by another 1995 act, Act 1325 of 1995, which also amended A.C.A. § 5-73-103 (the felon in possession statute), but which was not mentioned or discussed in Op. Att'y Gen. 95-260. Act 1325, unlike Act 595, did not concern itself with the effect of an expunged felony conviction on the right to carry a firearm. The sole change in previous law made by Act 1325 of 1995 concerned the penalty for a felon (any felon), possessing a firearm. Prior to the adoption of Act 1325, the felon in possession statute had been amended by Act 63 of 1994 (1st Ex. Sess.), to increase the penalty for "felon in possession" from a Class "D" to a Class "B" felony. Act 63 provided that "A person who violates this section commits a Class B felony if he has been convicted of a felony. Otherwise, he commits a class A misdemeanor."[2] The intent of Act 1325 of 1995 was apparently to mitigate the sometimes harsh application of the increased penalty adopted in Act 63. The only change Act 1325 made to the law was to add an exception noting that in some cases, the "felon in possession" charge would not be a Class "B" felony, but would remain a Class "D" felony. Thus, Act 1325 changed the language to provide that: "A person who violates this section commits a Class "B" felony if he has been convicted of a felony unless the prior felony(s)was for a nonviolent offense and the possession of the firearm did notinvolve the commission of another crime, then it is a Class D felony.
Otherwise, he commits a Class A misdemeanor." (Emphasis added to highlight Act 1325's additions.)
Act 1325 of 1995 did not involve in any way the effect of an expunged felony conviction on a person's right to possess a firearm. This was the subject matter of Act 595 of 1995. Act 1325, however, despite the lack of focus on this issue, did restate the entire felon in possession statute, including the provisions of former law relevant to when a conviction is a conviction for purposes of that statute. Prior law (prior to Act 595 of 1995) merely stated that a determination that a person committed a felony "shall constitute a conviction for purposes of the felon in possession statute even though the court suspended imposition of sentence or placed the defendant on probation." (Emphasis added). Prior law did not address the effect of an expunged conviction on the right to possess a firearm. The statutory law prior to Act 595 was simply silent on this question and the court in Irvin, in light of this silence, and for other reasons, held that an expunged conviction was not a "conviction" under the statute. Act 1325 merely restated the old language which did not address expunged convictions.
Your questions arise in light of a perceived conflict between the two 1995 acts, (Acts 595 and 1325). Act 1325, which simply restated the prior law, with no reference to expunged felony convictions, technically became law after Act 595, which was enacted specifically to provide that expunged felony convictions may be used as an underlying felony to support a felon in possession charge. Act 1325 became a law without the Governor's signature, presumably on April 14, 1995. See Publisher's notes to A.C.A. § 5-73-103 (Supp. 1995). Act 595, the purpose of which was specifically to address the effect of an expunged conviction on the right to possess a firearm, contained an emergency clause which made it effective immediately upon the Governor's signature on March 13, 1995. There is thus an argument to be made that Act 1325, retaining the provisions of prior law, because it is the latter enactment, controls. Because the retained language of Act 1325 does not address the expungement question, it could be argued that the Irvin decision is still controlling and an expunged felony conviction cannot support a felon in possession charge under the holding of the Irvin decision. In that case persons who have expunged felony convictions would not be ineligible to possesses firearms under the felon in possession statute, and thus presumably would not be "ineligible" under Act 419 to obtain a concealed carry permit. You have posed two questions in this regard which are as follows:
 1. May the Director of the Arkansas State Police lawfully deny the issuance of a Concealed Weapons License to any person who had, or is entitled to have, his probation or suspended imposition or execution of sentence for any felonious act, expunged?
 2. Does Act 1325 of 1995, in any way, alter the opinion rendered in AGO 95-260?
It is my opinion that the answer to your first question can only be definitively resolved by a court. The argument that Act 1325 of 1995 has somehow impliedly repealed the provisions of Act 595 of 1995, which allows an expunged conviction to support a felon in possession charge, may be advanced by a defendant in defense of a charge brought under A.C.A. § 5-73-103. In the absence of any controlling court decision, however, it is my opinion that a court faced with the issue would in all likelihood hold that Act 595 is valid, has not been repealed by implication by Act 1325, and operates to render persons with expunged felony convictions ineligible to carry firearms, unless pardoned or granted restoration of rights. In response to your second question, while an issue arises as to the allegedly conflicting provisions of Acts 595 and 1325, in my opinion, a court would resolve the issue by giving effect to the language of both acts.
It is true as a rule of statutory construction that when two statutes are in irreconcilable conflict with each other, as a general rule, the latter act controls. See Gibson v. City of Trumann, 311 Ark. 561, 845 S.W.2d 515
(1993) and Roberts v. Tice, 198 Ark. 397, 129 S.W.2d 258 (1939). Such a conflict leads to a repeal of the previous law by implication. It is also steadfastly held, however, that a basic and fundamental rule when considering the effect of statutes is that a repeal by implication is not favored and is never allowed except where there is such invincible repugnancy between the two provisions that both cannot stand together.Donoho v. Donoho, 318 Ark. 637, 887 S.W.2d 290 (1994). See also Thomasv. State, 315 Ark. 518, 868 S.W.2d 85 1994); Routh Wrecker Service, Inc.v. Wins, 312 Ark. 123, 847 S.W.2d 707 (1993); and Henslee v. MadisonGuaranty Savings and Loan Ass'n., 297 Ark. 183, 760 S.W.2d 842 (1989). An implied repeal may also occur even when two acts on the same subject are not in their express terms repugnant, where the latter act covers the entire subject matter anew, and plainly was intended as a substitute for the first act. Uilkie v. State, 309 Ark. 48, 827 S.W.2d 131 (1992) andBerry v. Gordon, 237 Ark. 547, 376 S.W.2d 279 (1964).
It is also a rule of statutory construction, however, that courts will lean to that construction which will give effect to two acts apparently in conflict, especially if both are passed at the same session of the legislature. Love v. Hill, 297 Ark. 96, 759 S.W.2d 550 (1988); Cordellv. Kent, 174 Ark. 503, 295 S.W. 404 (1927) and Ex parte Trapnell,6 Ark. 9 (1845). It has also been held that the "last passed" rule must yield when its application would undermine legislative intent. See Hornv. White, 225 Ark. 540, 284 S.W.2d 122 (1955), (holding that where acts passed at the same session contain conflicting clauses, the whole record of legislation will be examined to ascertain the legislative intent, and such intent, if ascertained, will be given effect, regardless of priority of enactment). Finally, and most importantly, it has been recently held by the Arkansas Supreme Court that the "last passed" rule should have no application when "nonamendatory re-enactments" are at issue. Citizens toEstablish a Reform Party v. Priest, 325 Ark. 257, ___ S.W.2d ___ (1996). The court there stated that: "[w]hen an act amends the law, portions of the law that are not amended but simply retained are not thought of as new enactments. Resorting to the `last passed' rule under such circumstances would elevate mechanical application over thoughtful analysis." Id. at p. 265, citing Peterson Produce Company v. Cheney,237 Ark. 600, 374 S.W.2d 809 (1964).
It is my opinion, in light of all of the rules of statutory construction set out above, that Acts 595 and 1325 of 1995 are not in irreconcilable conflict. Effect can be given to both and both can stand together. Each of the acts amended A.C.A. § 5-73-103 to do two entirely different things. One act, Act 1325, amended the portion of the statute relevant to the penalty imposed for all felons possessing a firearm, and merely restated the language of the prior law relevant to what constitutes a conviction for purposes of that statute. Under such circumstances, Act 1325 is not thought of as a new enactment on the latter point, and thus does not operate to repeal Act 595 which was adopted to specifically amend A.C.A. § 5-73-103 on the question of what constitutes a conviction under that statute and to authorize the use of an expunged felony conviction to support a felon in possession charge. Similarly, in my opinion Act 1325 does not cover the entire subject matter of A.C.A. §5-73-103 anew so as to give rise to the conclusion that it was intended as a substitute for Act 595. Act 1325, rather, only made one specific change in the statute which was unrelated to the subject matter of Act 595. Under such circumstances the facts of the Uilkie case, supra., are distinguishable. (The facts of that case did involve a latter act which covered the entire subject matter of a statute anew.)
The same result obtains under A.C.A. § 1-2-207(b) (Supp. 1995), which provides as follows:
 (b) When more than one (1) act concerning the same subject matter is enacted by the General Assembly during the same session, whether or not specifically amending the same sections of the Arkansas Code or an uncodified act, all the enactments shall be given effect except to the extent of irreconcilable conflicts in which case the conflicting provision of the last enactment shall prevail. The last enactment is the one which the Governor signed last.
This statute also seeks to give effect to both enactments, if possible, even if both amend the same Arkansas Code section, and provides for an implied repeal only in the case of an irreconcilable conflict. Again, the provisions of both Act 595 and 1325 can be given effect. There is no irreconcilable conflict between the two acts because each addresses a different subject matter. Act 1325's nonamendatory retention of prior language relevant to expunged convictions is not thought of as a new enactment which would operate to repeal anything in Act 595 on that point. See Reform Party, supra. Even if there were an irreconcilable conflict between these two acts, the statute above provides that the last enactment prevails, and the last enactment is the one the Governor signed last. The Governor did not sign Act 1325 at all. It is difficult to opine that Act 1325 should prevail under the statute above when it was not last signed, or signed at all, by the Governor.
Despite all of the rules of statutory construction set out above, and the provisions of A.C.A. § 1-2-207(b), the Arkansas Code Revision Commission in, codifying these 1995 enactments, chose to codify only the provisions of Act 1325, stating that its decision was "pursuant to A.C.A. §1-2-207." See A.C.R.C. Notes to A.C.A. § 5-73-103. The Arkansas Code Revision Commission then purports to set out the provisions of Act 595 of 1995 in the A.C.R.C. Notes following A.C.A. § 5-73-103, but what is set out is not the amendment made by Act 595, but the prior law as it existed after the passage of Act 63 of 1994 (1st Ex. Sess.).
It is my opinion, although there may be room for arguments on both sides of the issue, that the Arkansas Code Revision Commission has improperly and erroneously omitted the amendment made by Act 595 from the Arkansas Code. The Arkansas Supreme Court will not allow a drafting error or codification error to circumvent legislative intent. Reform Party,supra; Rosario v. State, 319 Ark. 764, 894 S.W.2d 888 (1995); and Cox v.City of Caddo Valley, 305 Ark. 155, 806 S.W.2d 6 (1991). It is therefore my opinion that in all likelihood the answers to your two questions are "yes," and "no," respectively.
If this conclusion leads to what is perceived as a harsh or unfair result, the matter may be rectified by the legislature at the next opportunity, or the Governor may exercise his discretion to pardon or restore firearm rights in favor of such cases. I cannot conclude, however, based upon any such considerations, that Act 595 has been impliedly repealed. The rules of statutory construction and relevant statutes simply do not support such a conclusion.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] The use of the word "and" in this language, i.e. "pardoned . . . and had firearms possession rights restored," should probably, in light of A.C.A. § 5-73-103, be read as "or," to reflect the fact that a convicted felon may regain his firearms rights pursuant to a certain kind of pardon, or through a separate procedure to restore the rights.
[2] The misdemeanor charge is applicable to nonfelons who are also prohibited under the statute from possession firearms, i.e. persons adjudicated mentally ill, or committed involuntarily to a mental institution.