Kathleen BOURNE, *Guardian*, and Ralph Howell,
*A Minor v.* BOARD of TRUSTEES of the
Little Rock POLICEMAN'S RELIEF PENSION FUND

01-444 59 S.W.3d 432

Supreme Court of Arkansas
Opinion delivered November 15, 2001

*Robert A. Newcomb*, for appellant.

*Edward G. Adcock*, for appellee.

JIM HANNAH, Justice. This is an appeal from the trial court's dismissal of a deceased retired police officer's surviving son's suit for benefits under his father's pension where his father had no spouse at the time of his death. The applicable statute at the time of the retired police officer's death in 1997, Ark. Code Ann. § 24-11-425 (Supp. 1997), provided that a monthly pension would be paid to a qualified survivor "during the surviving spouse's life." This language requiring a living spouse as a condition for payment of a survivor's pension first appeared in the statute in 1987 when the code was reenacted. No act of the Arkansas Legislature made this change. The last act amending section 24-11-425 prior to the 1987 code revision was Act 1027 of 1985. That Act, in referring to the

qualified survivor, stated "during his/her life," rather than "during the surviving spouse's life," which inexplicably appears in the 1987 volume. The language "during his/her life" first appeared in Act 582 of 1981 and remained in the statute until the 1987 code revision. In fact "during his/her life" also appeared in Act 618 of 1987 which amended section 24-11-425 as it appeared in the 1987 supplement rather than the 1987 volume. Yet somehow in the 1987 Supplement we find again "during the surviving spouse's life." Thus, while the statute as it appeared in the 1987 volume required a surviving spouse, no act of the legislature ever amended the section 24-11-425 to use this language. Therefore, there was a modification or change in the statute in revision in a manner not authorized by the laws or constitutions of Arkansas. Ark. Code Ann. § 1-2-103(a) (Repl. 1996) provides that in such case the prior language applies. Thus, Ark. Stat. Ann. § 19-1808 (Supp. 1985) applies to this case and provides that where there is a surviving spouse, child, or children under the age of eighteen, then the Board of Trustees shall direct a monthly pension to a surviving spouse for life or to a surviving minor child to age eighteen. The applicable statute does not make payment of a monthly pension to a qualified dependent on the existence of a surviving spouse. On this basis, the trial court entered a dismissal in error, and this case is reversed and remanded.

*Facts*

Matthew Howell was born in 1983 while his father Ralph Howell was a member of the Little Rock Police Department. Ralph retired in 1989 and began receiving retirement benefits. On his application for benefits, he listed his son Matthew as a qualified survivor in the event of his death. Ralph and Matthew's mother, Kathleen Bourne, were divorced. Thus, on March 24, 1997, Ralph died without a surviving spouse. After Ralph's death, Matthew applied for and was denied death benefits under Ark. Code Ann. § 24-11-425 because there was no surviving spouse. In 1999, the statute setting out pension benefits was modified to provide benefits for surviving children in the absence of a surviving spouse. Matthew again applied, and was again denied, this time based upon Ralph's death being in 1997 and the court finding the 1999 act was not retroactive.

## Statutory Interpretation

 This case requires interpretation of the Arkansas statutes. In *Western Carroll Cty. Amb. Dist. v. Johnson*, 345 Ark. 95, 44 S.W.3d 284 (2001), this court stated:

> We review issues of statutory construction de novo, as it is for this court to decide what a statute means. *Hodges v. Huckabee*, 338 Ark. 454, 995 S.W.2d 341 (1999). The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Dunklin v. Ramsay*, 328 Ark. 263, 944 S.W.2d 76 (1997). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Burcham v. City of Van Buren*, 330 Ark. 451, 954 S.W.2d 266 (1997).
>
> The basic rule of statutory construction is to give effect to the intent of the General Assembly. *Ozark Gas Pipeline v. Arkansas Pub. Serv. Comm'n*, 342 Ark. 591, 29 S.W.3d 730 (2000). Where the language of the statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. We construe the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute if possible. *Id.* However, we will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. *Burford Distributing, Inc. v. Starr*, 341 Ark. 914, 20 S.W.3d 363 (2000).

*Western Carroll Cty. Amb. Dist.*, 345 Ark. at 99-100.

 In applying these principles to the interpretation of Ark. Code Ann. § 24-11-425, we first note that the phrase in contention provides benefits for children of deceased police officers if there is a surviving spouse, but does not if there is no surviving spouse. It would be surprising if the legislature intended to provide for children of deceased officers who had surviving spouses but did not intend to provide for an officer's orphaned child. This might be argued to be an absurd consequence contrary to legislative intent. However, we note more significantly that we are unable to find any act of the legislature that amended the subject sentence to include this language making payment of benefits dependent upon the existence of a surviving spouse. It appears this language was added

and the statute was changed in error in the reenactment of the code in 1987. On that basis, Ark. Code Ann. § 1-2-103 applies to correct the error. *Cox v. City of Caddo Valley*, 305 Ark. 155, 806 S.W.2d 6 (1991). We first, however, consider the legislative and statutory history of the Policeman's Pension and Relief Fund.

### The Policeman's Pension and Relief Fund

We have before us something more than merely a retirement plan for police officers. Act 250 of 1937 established a "policeman's pension and relief fund." Section one of Act 250 provides a tax on property to provide a fund for pensioned and superannuated members of the police department as well as for "widows and orphans or dependent mothers of deceased members of the police department. . . ." This purpose set out in the original act has been adhered to consistently throughout the years until the erroneous amendment of section 24-11-425 in the 1987 code reenactment. The statute has indeed been amended by the Legislature a number of times, but up until 1987, it always retained the same purpose, to benefit police officers through retirement, disability, and provide pension benefits for spouses and children in the event of death of the police officer. Only by the unintended modification to the statute in the 1987 reenactment was this purpose altered to require a surviving spouse before any monthly pension could be paid to survivors.

Section 8, as originally drafted in 1937, provided that the benefits were to be paid to police officers as well as "to such widow" and "for such child." Also, section 8 in its last sentence stated, "Provided that any member of the police department retired and pensioned under the provision of the Act shall die while so retired and pensioned, leaving a widow or children or widowed mother surviving, shall be entitled to a pension under this act." Section 13 of the Act makes provision for a widow or child or widowed mother to make application to the board of trustees. Finally, section 19 requires every member of the department to file the names of beneficiaries. Thus, it is apparent that the pension and relief fund was not intended simply as a retirement fund for police officers. This Act was codified in Pope's Digest, sections 9863, 9868, and 9874. Act 86 of 1953 modified funding and modified pension amounts. Again, the benefits were to be paid "to such widow" and "for such child." Section 8 was again modified in 1965 and in 1967; however, the cited language remained the same. In 1981, by Act 582, Section 8 was amended to provide, "[S]hall leave

a widow or child or children under the age of eighteen (18) year surviving, the said board of trustees shall direct a monthly pension during his/her life. . . ." This same act added a provision that stated, "In addition to the above monthly pension such Board of Trustees shall order and direct payment of the sum of one hundred twenty five dollars ($125.00) per month to each child under eighteen (18) years of age" under certain conditions there set out. This was a benefit to provide added assistance to children furthering their education.

Our current problem arose during codification and reenact-ment of the Arkansas laws in 1987. There is a fundamental change in the statute as printed in 1987 that can't be accounted for in the acts. Act 1027 of 1985 was the last act prior to the 1987 code revision, and is referenced in the notes at the end of the statute in the 1987 volume. This Act made some changes to the statute. However, the relevant language read:

> If any active police officer shall die or if any retired member dies from any cause, leaving a surviving spouse or child or children under the age of eighteen (18) years, *then the Board of Trustees shall direct a monthly pension during his/her life in an amount.* . . . (Emphasis added.)

Thus, as stated, the language "during his/her life" remained from 1981 until the Code reenactment. Somehow this language was altered in transcription into the 1987 Code to read:

> If any active police officer shall die or if any retired member dies from any cause, leaving a surviving spouse or child under the age of eighteen (18) years, *then the Board of Trustees shall direct a monthly pension during the surviving spouse's life in an amount.* . . . (Emphasis added.)

The change from "during his/her life" to "during the surviving spouse's life" fundamentally alters who may draw a pension. Under the language printed in the 1987 Code, a child may not be paid a monthly pension unless there is a surviving spouse. Apparently no one caught this error because from 1987 until 1999 the language "during the surviving spouse's life" remained in the printed code. It should also be noted that Act 618 of 1987, which amended the section and appeared in the 1987 supplement, also provides "during his/her life." Inexplicably this language was not used in the 1987 supplement. Again, the language printed in the code is "during the

surviving spouse's life." It was only in Act 978 of 1999 that the error was apparently caught and corrected.

This type of error was envisioned when the new code was adopted in 1987. Act 267 of 1987 codified at Ark. Code Ann. § 1-2-103(a)(3) provides:

> (a) All acts, codes, and statutes, and all parts of them and all amendments to them of a general and permanent nature in effect on December 31, 1987, are repealed unless:
>
> . . .
>
> (3) Omitted, changed, or modified by the Arkansas Code Revision Commission, or its predecessors, in a manner not authorized by the laws or the constitutions of Arkansas in effect at the time of the omission, change, or modification.

Here we have a change or modification that was not authorized by the laws in effect at the time of the change or modification. The prior statute, Ark. Stat. Ann. § 19-1808 (Supp. 1985), provided that the Board of Trustees shall direct a monthly pension "during his/her life."

Nothing in Act 1027 of 1985 permitted substituting "during a surviving spouse's life" for "during his/her life," which is the proper language of the Act. Somehow a clerical error was made in codification in the new code in 1987. A similar situation was discussed in *Cox, supra.* There, the Arkansas Code Revision Committee used "or" where the act had stated "and/or." Therein the court stated:

> While it is stated that all acts and statutes in effect on December 31, 1987, were repealed by the codification and reenactment of the Arkansas laws, exceptions are provided, and when applicable, the law as it existed on December 31, 1987, shall continue to be controlling. Ark. Code Ann. 1-2-103 (1987). One such exception occurs if the act or statute is omitted, changed, or modified by the Arkansas Code Revision Commission in a manner not authorized by the laws or the constitutions of Arkansas in effect at the time of the omission, change, or modification. Ark. Code Ann. 1-2-103(a)(3).

*Cox,* 305 Ark. at 157-158.

Here, there is no act that substituted "during the surviving spouse's life" for "during his/her life." The change or modification of section 24-11-425 was done by the Arkansas Code Revision Commission in a manner not authorized by the laws or the Constitution of Arkansas in effect at the time of the omission, change, or modification. Ark. Code Ann. § 1-2-103(a)(3).

██ ██ However, it should be noted that Act 1197 of 1993 and Act 1241 of 1997 used the same language as contained in section 24-11-425(a) except the minimum amount of payment. Act 1197 of 1993 and Act 1241 of 1997 did not amend section 24-11-425(a) in any way other than to increase the minimum amount of payment. Thus, it appears the legislature looked to the code as printed in drafting the 1993 and 1997 acts and inadvertently picked up the erroneous wording. This problem was addressed in *Citizens to Establish a Reform Party v. Priest*, 325 Ark. 257, 926 S.W.2d 432 (1996), wherein this court noted a provision was included in a statute by mistake beginning with the 1987 reenactment and in a subsequent act the legislature clearly looked to the erroneous language in the code. The court there stated:

> In drafting Acts 946 and 963 of 1995, the legislature obviously looked to the Code provisions. The language used in those Acts does not reflect the original language contained in Act 123 of 1987. It mirrors the modified version of the exception which erroneously appeared in the Arkansas Code. We are reluctant to interpret a statute in a manner contrary to its express language, but we cannot allow a drafting error or codification error to circumvent legislative intent. *Rosario v. State*, 319 Ark. 764, 894 S.W.2d 888 (1995); *Cox v. City of Caddo Valley*, 305 Ark. 155, 806 S.W.2d 6 (1991).

*Citizens to Establish a Reform Party*, 325 Ark. at 264.

Thus, while the legislature used the erroneous language substituted in the 1987 reenactment, it was a codification error which circumvents the legislative intent, and resort to the wording of the statute prior to the error is required. Ark. Code Ann. § 24-11-425 was previously Ark. Stat. Ann. § 19-1808. The last printing of the statute prior to the error was in the 1985 Supplement. It reads as follows:

> If any active police officer shall die or if any retired member dies from any cause, leaving a surviving spouse or child or children under the age of eighteen (18) years, then the Board of Trustees

shall direct a monthly pension during his/her life in an amount equal to the rank of the deceased police officer. . . .

 The term "during his/her life" means that if an active or retired police officer dies with a surviving spouse or a surviving child or children, a monthly pension shall be paid to such spouse for life, if there is one, or to the minor child or children until the age of eighteen. Thus, payment of a pension under the statute is not dependent upon a spouse surviving the death of the active or retired police officer. We also note that paragraph (a) of Ark Code Ann. § 24-11-245 was substantially amended by Act 978 of 1999, now discussing the benefits paid to the surviving spouse in paragraph (a) and discussing benefits paid to children in paragraph (b). Arguably, this corrects the error just discussed because payment of benefits to children is not tied to the existence of a surviving spouse. This change casts light on legislative intent in this case. While the amendment of an act does not control the interpretation, we can look to changes in statutes made by subsequent amendments to determine legislative intent. *Pledger v. Mid-State Constr. & Materials, Inc.*, 325 Ark. 388, 925 S.W.2d 412 (1996). The 1999 Act brought the statute back into conformity with the statute as it existed prior to the 1987 reenactment and tends to show there was an error.

As to cases arising under section 24-11-425 between the 1987 reenactment and the 1999 amendment on the issue of who may be qualified to receive a monthly pension under the statute, Ark. Stat. Ann. § 19-1808 (Supp. 1985) applies.

 Reversed and remanded.